condition. The voyage lasted seventy-two days, and the weather was bad. No other proof was given of the loss of the cargo than the testimony of the mate.

Mr. Starr, for libelants.

Bebee, Dean & Donohue, for claimants.

BETTS, District Judge. Held, that the pleadings on both sides are exceedingly curt and uninstructive, and the libel would have been dismissed for omitting to set forth a definite cause of action had not the answer happened to supply its defects by intimating that the merchandise consisted of seed. Joining this concession to the loose suggestions of the libel, the court may be justified in implying that the controversy related to thirty-one bags of some kind of seed, and then admit the bill of lading and other proofs to specify and explain the contract between the parties.

That the testimony of the mate plainly imports that the packages when put on board were in good order and full, and may be invoked by the libelant in corroboration of the admission of the bill of lading, and supplies all the proofs which the claimant could demand extraneous to the bill of lading to remove the effect of the clause of "Weight and contents unknown."

That the cargo then being received in good order, it devolves upon the ship-owner to show from what causes the injury arose, if he would free himself from his positive obligation as common carrier.

That this court has never felt authorized to imply an exoneration of a common carrier by water from responsibility for losses occasioned by perils of the sea when not expressly stipulated by the parties in the contract.

That no proof is given to exonerate the schooner, and the libelant is accordingly entitled to recover.

Decree for libelants, with a reference to compute damages.

---

NORDLINGER v. The CATHARINE. See Case No. 2,512.

---

## Case No. 10,296.

### NORDLINGER v. VAIDEN.

District Court, D. Mississippi. 1867.

WAR — CONTRACT PAYABLE IN CONFEDERATE CURRENCY.

[A. sold property during the war to B. for $15,000, to be paid in Confederate notes. *Held*, that A. could not sue on this contract, nor on a note for $15,000 given to secure payment, though the note did not specify in what currency payment should be made.]

[Cited in Lawson v. Miller, 44 Ala. 616.]

[Decided by HILL, District Judge. Nowhere reported; opinion not now accessible. The statement of the point determined was taken from 2 Am. Law Reg. 188.]

## Case No. 10,297.

### The NORFOLK et al.

BUTT v. The NORFOLK. BUTT v. The UNION. CORY v. The NORFOLK. CORY v. The UNION.

[2 Hughes, 123.] [1]

District Court, E. D. Virginia. Sept. 24, 1877.

JURISDICTION IN ADMIRALTY—EXCLUSIVE OF STATE COURTS—MARITIME LIENS — MATERIALS — STATE LAW—MORTGAGE—SEAMEN—PRIORITY — CHANGE IN OWNERSHIP.

1. Where the admiralty jurisdiction of the United States courts attaches at all, it does so exclusively of the jurisdiction of the state courts.

2. The assignment of his claim by a material-man does not defeat the admiralty lien.

[Cited in The Emma L. Coyne, Case No. 4,-466.]

3. It attaches against a home vessel in favor of a material-man, under section 5, c. 148, Code Va. 1873, and especially under chapter 44, Acts Assem. Va. 1876–77, enacted January 26, 1877.

4. The claims of a material-man and of a seaman or engineer of a ferry steamer are superior to that of a mortgagee.

[Cited in The Canada, 7 Fed. 735.]

5. Where there is no change of ownership circumstances must be very strong to render the claim of a regularly employed engineer of ferry steamers for wages in arrear stale.

6. A claim by an engineer for overdue and unpaid wages does not necessarily become stale in twenty months.

In admiralty, for supplies furnished and for seamen's wages.

James M. Butt files two libels for supplies furnished on the credit of the boats about to be named. William H. H. Cory, engineer of the same boats, plying across Norfolk harbor, files two libels, one against each of them. The boats are ferry steamers which were used on the Ferry Point or Berkeley Ferry, named the Norfolk and the Union. The steamers were run alternately, one of them running when the other was withdrawn for repairs. Cory's service began in March, 1873, and terminated on the 1st of June, 1877, his wages being, by agreement, at the rate of $65 per month; and he claims that there was due him at his retirement from the line, the sum of $1269.96, which is equivalent to an arrearage for nearly twenty months. A statement of the items showing the balance thus claimed to be due him is filed with the libels, and is made out by J. A. Jackson, master and principal owner of the boats, and proved by the said master in evidence to be correct. Cory also avers in evidence the correctness of the claim. On the 1st of May, 1875, a deed of trust was made by Jesse A. Jackson, sole owner of the Norfolk, and by said Jackson and Lycurgus Berkeley, joint owners of the Union, conveying to Charles Sharp, trustee, these

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]